**350**

George M. Beltzhoover, Jr., of Charleston, W. Va., for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

JACKSON, Judge, dissenting.

James J. Shanley, of Detroit Mich., for appellants.

W. W. Cochran of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL and JOHNSON, Judges.

O'CONNELL, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the action of the Primary Examiner in rejecting all the claims, Nos. 1, 2, and 3, in appellants' application for a patent for alleged improvements "For Recovery of Cyclopentadiene."

Appellants have moved in their brief to withdraw the appeal with respect to claims 1 and 3, which motion will be granted.

Claim 2 was rejected as lacking invention over the following cited prior patents and publication:

36 C.C.P.A.(Patents)

**Application of SPAULDING et al.**

**Patent Appeal No. 5538.**

United States Court of Customs and Patent Appeals.

March 1, 1949.

Ward 2,211,038 Aug. 13, 1940; Lycan et al. 2,349,047 May 16, 1944; Glowacki et al. 2,349,418 May 23, 1944; Harkness et al., "Journal Chemical Physics," 1937, Volume 5, pages 684 and 685.

Appellants' alleged invention is defined in claim 2 as follows: "2. A process for separating cyclopentadiene from coke oven by-product light oil fractions containing the same comprising passing the fractions into a polymerization zone, maintaining the fractions in vapor phase in the polymerization zone and at a reaction temperature between about 150°C. and about 275°C. and under a pressure in the neighborhood of atmospheric pressure, maintaining the vapors at reaction temperature for a time sufficient to polymerize cyclopentadiene to dicyclopentadiene but insufficient to cause substantial polymerization of the dicyclopentadiene to higher polymers, passing the effluent of the polymerization zone to a condensation zone wherein the effluent is reduced to a temperature below 170°C. but above 40°C. to condense the dicyclopentadiene and collecting the liquid dicyclopentadiene."

The alleged invention relates to a process for recovering cyclopentadiene from light oil fractions from coke oven by-product plants. The process defined in the claim, as correctly stated in the brief of the Solicitor for the Patent Office, comprises the following steps:

"(1) passing light oil fractions containing cyclopentadiene into a polymerization zone.

"(2) maintaining the fraction in vapor phase in the polymerization zone and at a temperature between 150°C. and 275°C. at atmospheric pressure,

"(3) maintaining the vapors at reaction temperature for a time sufficient to polymerize cyclopentadiene to dicyclopentadiene but insufficient to cause substantial polymerization to higher polymers,

"(4) passing the effluent from the polymerization zone to a condensation zone wherein the temperature of the effluent is reduced below 170°C. but above 40°C."

The patent to Ward discloses a process for separating cyclopentadiene from light oils, such as are obtained in the manufacture of coke-oven gas. The oil is heated under superatmospheric pressure in a closed vessel, such as an autoclave, for a period of twenty-four hours at a temperature considerably in excess of 40°C., usually not to exceed 170°C., and preferably in the neighborhood of 100°C. As a result of this treatment, the larger part of the reacting material is maintained chiefly in a liquid phase.

The cyclopentadiene is selectively polymerized to dicyclopentadiene. As described in the specification, "the dicyclopentadiene may be separated from the lower boiling materials by any suitable means such as distillation at low pressure to purify the dicyclopentadiene." The purpose of the distillation at low pressure, it is stated, is to avoid depolymerization of the dicyclopentadiene back to cyclopentadiene.

The patent to Lycan et al. discloses a process for preparing cyclopentadiene from dicyclopentadiene in which the dicyclopentadiene, preferably dissolved in a solution such as xylol, trickles down over a heated surface, thus effecting the splitting of the dicyclopentadiene and vaporization of the monomer. The vapors so produced are then quickly passed through a zone or partial condenser wherein unconverted dicyclopentadiene is condensed to a liquid without condensing the cyclopentadiene vapors which are then passed through a second condenser and also condensed to a liquid.

The patent to Glowacki et al. discloses a process for separating cyclopentadiene from dicyclopentadiene. The specification states that vaporized cyclopentadiene is returned to the liquid state to be polymerized. The essence of the invention resides in the fact that when—"coke oven light oil fractions are heated at substantially the normal boiling point of cyclopentadiene and at substantially atmospheric pressure and with continuous refluxing of volatized components of said fractions to the heating vessel, the cyclopentadiene content is rapidly polymerized substantially completely to the dimer form * * *."

Upon completion of the polymerization of the cyclopentadiene to the dimer form,

the objectionable materials are removed therefrom by fractional distillation.

The article published by Harkness et al. shows, as appellants concede in their brief, "that polymerization of pure cyclopentadiene in vapor phase can be accomplished in Appellants' temperature range but without good control and with time factor undisclosed."

The appealed claim was rejected by the examiner as lacking invention over the disclosure of either the patent to Ward or the patent to Glowacki et al. in view of the disclosure of the patent to Lycan et al. and the published article by Harkness et al. The examiner's position was that no invention would be involved in substituting the vapor phase polymerization defined in the secondary references, and in the appealed claim, for the liquid phase polymerization disclosed in the patent to Ward and Glowacki et al., nor in the substitution of fractional condensation as claimed by appellant for the fractional distillation disclosed by each of those two patents.

The board agreed with the grounds of rejections stated by the examiner. The board considered that the references disclosed vapor phase polymerization, and that to obtain the process defined by the claim on appeal it was only necessary, without the exercise of the inventive faculty, to substitute the specific disclosures of the cited art for the steps and conditions enumerated in the claim.

The Solicitor for the Patent Office contends that the disclosure of the patent to Ward contains everything set forth in the respective steps of the process claimed by appellants, with the possible exception of the temperature and pressure limitation of appellants' step 2, supra. He contends further that the temperatures set forth in the Harkness et al. publication clearly fall within the range defined in step 2 of the claim, and that the pressure limitation of

the publication would appear to be clearly in "the neighborhood of atmospheric." Accordingly, the solicitor submits, only skill of the art would be involved in utilizing those conditions for the ones specifically taught by the patent to Ward.

We are unable to agree with the conclusion expressed by the solicitor or with the reasoning upon which the Board of Appeals reached its final conclusion. With respect to pure cyclopentadiene, the cited art discloses that vapor phase dimerization offers serious difficulties that are not presented in liquid phase polymerization. The reasonable inference to be drawn from the article by Harkness et al. is that the vapor phase dimerization of cyclopentadiene is unpredictable and that the liquid phase polymerization is the proper solution of the problem.

The references, singly or in combination, do not disclose or suggest the process defined by the claim. The mere substitution of the vapor phase polymerization defined by the secondary references for the liquid phase polymerization disclosed by the patents to Ward and Glowacki et al. is not sufficient to meet the critical differences between the processes of the prior art and the process claimed by appellant. It is our opinion, in view of the record, that appellant in his process has disclosed a new combination of steps which not only perform a different function from those of the cited prior art but also produce new and unexpected results.

In view of that conclusion, it is deemed unnecessary to discuss other points to which counsel have directed their arguments. Appellants' motion to dismiss the appeal with respect to claims 1 and 3 is granted, and the decision of the Board of Appeals with respect to claim 2 is reversed.

Reversed.

JACKSON, Judge, dissents.